**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

DARREN MALLOY HEKKING & SHAUN EGAN
HEKKING, on behalf of himself and
on behalf of C.H. and B.H.,
     Plaintiffs,

        v.                         C.A. No. 14-295-ML

CRAIG ANTONY HEKKING &
MOLLY DURANT HEKKING,
     Defendants.

**MEMORANDUM AND ORDER**

This case involves a bitter family dispute over a considerable inheritance. The eldest of three brothers, Craig Antony Hekking ("Craig H."), was appointed as executor of their late father's and stepmother's estates (the "Estate") and as the trustee of a separate trust established by the stepmother (the "Trust"). The plaintiffs, Darren Malloy Hekking ("Darren H.") and Shaun Egan Hekking ("Shaun H."), both on his own and his children's behalf (together with Darren and Shaun H., the "Plaintiffs"), have alleged that Craig H., with the assistance of his wife, Molly Durant Hekking ("Molly H.," together with Craig H., the "Defendants"), has converted the multi-million-dollar Estate—which was to be shared equally by his brothers and a portion of which was intended to benefit Craig's and Shaun's children—to his own benefit.

The matters before the Court are (1) Craig Hekking's

objection (Dkt. No. 58) to the November 25, 2014 Report and Recommendation ("R&R") (Dkt. No. 50), in which Magistrate Judge Sullivan recommends that the previously imposed default against Craig H. be reinstated and that he be enjoined from serving as personal representative of the Estate and trustee of the Trust; (2) Craig H.'s motion for extension of time to complete discovery (Dkt. No. 51); (3) Craig H.'s motion to dismiss for lack of jurisdiction or, in the alternative, for joinder (Dkt. No. 53); (4) Craig H.'s motion to compel Rule 26(a) initial disclosures from all Plaintiffs; and (5) Molly H.'s motion to join indispensable parties and to dismiss for lack of subject matter jurisdiction (Dkt. No. 54).

## I.   First Default Imposed and Vacated

Default against the Defendants was first entered on a procedural basis only: they had failed to file a timely answer or other response to the June 27, 2014 complaint (the "Complaint"). Only after the Plaintiffs sought an entry of default and a preliminary injunction against the Defendants to preclude them from disposing or concealing property of the Estate, did the Defendants enter the litigation by seeking to vacate the default. The Defendants, who initially had engaged counsel to represent them jointly, asserted that they had never been served with the summons and Complaint (Dkt. No. 15-1). In support, they submitted

a sworn affidavit by Craig H., in which he asserted that he and his wife had not been at their residence on the day that service had purportedly been effected and that they had been unaware of the lawsuit until they received Plaintiffs' related motions in the mail (Dkt. No. 15-2).

On September 17, 2014, following an evidentiary hearing in which Craig H.'s version of the events was conclusively disproved by a meticulous service processor and a highly qualified handwriting expert, this Court issued a lengthy Memorandum and Order (Dkt. No. 28). Although the Court determined that the default in this case had been willful, there was no evidence that established that the Defendants' delay had been done to gain an advantage or that the Plaintiffs had been unduly prejudiced that early in the litigation. Accordingly, the Court decided to vacate the default, but only with an express caveat: in the event it were to become apparent that the Defendants were using delay to gain a litigation or practical advantage, the Court would reconsider its ruling and reinstate the Default. Memorandum and Order at 18 (Dkt. No. 28). In light of Craig H.'s blatantly perjurious conduct at the evidentiary hearing, the Court also required the Defendants to reimburse the Plaintiffs for counsel fees and other expenses in the amount of $30,777.93, such sums to

be paid from the Defendants'[1] personal assets, not the Estate. October 2, 2014 Order (Dkt. No. 34).

## II. Discovery Proceedings and Court Orders

In the interim, following a pretrial conference on August 15, 2014, in which all parties were represented, the Court granted the Plaintiffs' request for expedited discovery. Text Order 08/15/14. On September 25, 2014, Magistrate Judge Sullivan issued an order (Dkt. No. 32)[2] requiring the Defendants to produce, by September 27, 2014, a list of various discovery materials, including copies of their personal tax returns and bank statements from domestic and international accounts. All other materials requested in discovery were to be produced by October 5, 2014. The Plaintiffs were directed to advise the Court by October 7, 2014 whether the Defendants had complied with the Magistrate Judge's order.

On September 29, 2014, just prior to a scheduled hearing related to the Plaintiffs' motion for a preliminary injunction

---

[1] The Defendants, by letter dated September 25, 2014, advised the Court that they would not be filing any formal response or opposition to the Plaintiffs' Application for Fees and Costs and that they deferred to the Court with respect to the matter.

[2] The order was prompted by the Plaintiffs' motion to compel production of previously expedited discovery and for sanctions (Dkt. No. 25) and the Defendants' motion for enlargement of time to Plaintiffs' first request for the production of documents (Dkt. No. 22).

(Dkt. No. 11), the parties submitted a consent order (the "Consent Order") (Dkt. No. 33), pursuant to which the Defendants both agreed to refrain from using or converting any of the Estate property. Under the terms of the Consent Order, the Defendants were permitted to use up to $9,000 per month for living expenses, provided that such sums originated from a source other than the Estate and that the Defendants submitted monthly operating statements showing their expenses from the preceding month. In addition, the Defendants (both of whom signed the Consent Order) agreed to identify all Estate property and Craig H. agreed to execute all necessary documents to release funds in a known bank account in Hamburg, Germany, for the benefit of the Plaintiffs.

On October 7, 2014, the Plaintiffs submitted a status report (Dkt. No. 36) detailing how the Defendants had failed to comply with most aspects of the September 29, 2014 Consent Order. The Plaintiffs also described how, through their own independent investigation and third party subpoenas, they had discovered extensive banking information that the Defendants were obligated, but had failed, to provide.

On November 3, 2014, the Plaintiffs filed a further memorandum in which they advised the Court of the Defendants' continuing violation of prior Court orders (Dkt. No. 41). Again, the Plaintiffs set forth in great detail how the Defendants had

continued to dissipate Estate property. Specifically, the Plaintiffs noted that, based on the Plaintiffs' own discovery, the Defendants had spent or withdrawn $195,000 since commencement of the litigation in July 2014 and had spent or withdrawn $406,000 from the same bank since February 2014, when Craig H. was informed that the Plaintiffs were investigating his actions as personal representative of the Estate. The Plaintiffs also pointed out that they had yet to be reimbursed $30,777 in attorney's fees and costs, payment of which had been due by October 10, 2014.

On November 12, 2014, Magistrate Judge Sullivan conducted a hearing on Plaintiffs' motion for expedited discovery and sanctions (Dkt. No. 25). Both Defendants were present and newly engaged counsel for Craig H. (who, just prior to the second day of his deposition, had begun to invoke his rights under the Fifth Amendment) advised the Court that Craig H. would agree to being removed as administrator/executor of the Estate. Transcript of 11/12/14 hearing at 10:2-14.

On November 25, 2014, the Magistrate Judge issued an R&R in which she recommended, *inter alia*, that this Court reinstate the default against Craig H.; that he be enjoined from acting as a personal representative of the Estate or trustee of the Trust; and that he be directed to execute all documents to remove

himself from those positions (Dkt. No. 50).

Shortly after issuance of the R&R, the Defendants, now both represented by separate counsel, filed a flurry of motions:

1.  Craig H.'s motion to reopen discovery and set certain deadlines (Dkt. No. 51);

2.  Craig H.'s motion to dismiss for lack of jurisdiction, based on the "probate exception"(Dkt. No. 52);

3.  Craig H.'s motion to dismiss for failure to name his own four children as plaintiffs and to include various groups, trusts, and foundations in which Estate funds are or were kept (Dkt. No. 53);

4.  Craig H.'s motion to compel Rule 26(a) disclosures and for sanctions (Dkt. No. 55);

5.  Molly H.'s motion to join indispensable parties and to dismiss for lack of jurisdiction (related to Craig's two children with Molly H., who reside in Rhode Island, and his two children from a prior marriage, who reside in Connecticut)(Dkt. No. 54).

In addition, Craig H. filed an objection (Dkt. No. 58) to the November 25, 2014 R&R (Dkt. No. 50), to which the Plaintiffs filed a detailed response (Dkt. No. 72). Notably, Craig did not address his complete failure to comply with various Court orders or with the Consent Order. Instead, he maintained that imposition

of default would be inappropriate and unjust because his children were not included as plaintiffs; he and his wife were not effectively represented; the Court had failed to hold a Rule 16 hearing; and the Defendants had failed to make Rule 26 disclosures. As such, any substantive objections to the R&R were waived. See e.g., Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir.1998)(argument not raised in an objection to a magistrate judge's report and recommendation is waived).

On March 17, 2015, following (1) a further hearing on the Plaintiffs' motion to compel Court ordered expedited discovery (Dkt. No. 25) and on Molly H.'s motion for a protective order related to written deposition questions (Dkt. No. 76), and (2) a lengthy evidentiary hearing on January 26, 2015, at which Molly H. was questioned at length, the Magistrate Judge issued a second R&R (Dkt. No. 85). In finding that much of Molly H.'s failure to comply with Court orders was due to inability, the Magistrate Judge declined to recommend default or any lesser sanctions. Plaintiffs objected to this R&R, maintaining that Molly H. willfully violated court orders and perjured herself. (Dkt. No. 90).

On April 30, 2015, this Court conducted a hearing[3] on Craig

---

[3]

Of the Defendants, only Molly H. was present. Both Defendants were represented by their respective counsel.

and Molly H.'s assorted motions, Craig H.'s objection to the November 25, 2014 R&R, in which the Magistrate Judge recommended his default, and the Plaintiffs' objection to the March 17, 2015 R&R, in which the Magistrate Judge declined to impose a similar sanction on Molly H. At the conclusion of the hearing, the Court denied Craig H.'s motion to dismiss based on the probate exception (Dkt. No. 52), and it adopted the March 17, 2015 R&R with respect to Molly H. The Court took the remaining motions (Dkt. Nos. 51, 53, 54, 55) and Craig H.'s objection (Dkt. No. 58) to the November 25, 2014 R&R (Dkt. No. 50) under advisement.

**III. Defendants' Motions to Dismiss for Failure to Join Indispensable Parties (Dkt. Nos. 53, 54)**

Both Defendants contend that Craig H.'s four minor children (two with Molly H., who reside with the Defendants in Rhode Island, and two from a prior marriage, who reside with their mother in Connecticut) are necessary and indispensable parties who should have been included in this litigation as plaintiffs.[4] However, inclusion of Craig and Molly H.'s children as plaintiffs is not feasible because they are non-diverse to the Defendants. (Similarly, inclusion of Craig H.'s children from a former

---

[4] In addition, Craig H. suggests that the Plaintiffs failed to include various entities in which Estate assets were held. However, that point is merely alluded to and the gravamen of both Defendants' motions is that Craig H.'s children must be included in this litigation, but that such inclusion would break diversity.

marriage as defendants is not feasible because they are non-diverse to Plaintiff Darren H. In addition, Molly H. asserts that this Court is without personal jurisdiction over the children who reside in Connecticut). At the April 30, 2015 hearing, counsel for Craig H. took the position that Craig H.'s minor children should sue their parents[5] because the children's interests were not represented in this litigation. He agreed that such an inclusion would break diversity, but asserted that this Court would retain jurisdiction with respect to the sanctions entered against Craig H.

Molly H.'s counsel suggested that Craig H.'s children's interests were unrepresented, in part, because their position was not identical to their cousins, Shaun H.'s children, with respect to certain monies intended for educational benefits.[6] Specifically, the parties appear to be in disagreement as to whether the benefits of the educational trust (which held more than $1 million in assets but, at this time, appears to have been

---

[5]

    With respect to Craig H.'s two minor children from a previous marriage, the suggestion is that they should sue their father and his current wife.

[6]

    The Court notes that this argument was offered, for the first time, at the April 30, 2015 hearing and was diametrically opposed to Molly H.'s prior position that Craig H.'s children "are identically situated to Shaun Hekking's children." Molly H.'s motion to dismiss for failure to join indispensable parties at 5 (Dkt. No. 54).

completed depleted) should be divided *per stirpes* or *per capita*. As was established at the hearing, however, Plaintiffs are willing to concede that the distribution of those assets (should they ever be recovered) should occur on an equal basis for all children.

The mandatory joinder of parties is governed by Rule 19 of the Federal Rules of Civil Procedure. The aim of Rule 19 is "to protect the interests of parties who are not yet involved in ongoing litigation." <u>Jiminez v. Rodriguez-Pagan</u>, 597 F.3d 18, 25 (1st Cir. 2010). When feasible, Rule 19 (a) provides for joinder of required parties, Fed. R. Civ. P. 19(a); however, when joinder of a required party is not feasible <u>and</u> that party is indispensable, Rule 19(b) provides for dismissal of suits. Fed. R. Civ. P. 19(a), (b). <u>Bacardi Intern. Ltd. v. V. Suarez & Co., Inc.</u>, 719 F.3d 1, 9 (1st Cir. 2013).

To determine whether the interests of that party are critical to the litigation, the Court must engage in a two-part analysis. <u>Id.</u> First, whether a party is "necessary"[7] to the action is determined by considering the criteria set out in Rule

---

[7] "Necessary" in this context is "used as a term of art and signifies desirability rather than actual necessity."<u>Jiminez v. Rodriguez-Pagan</u>, 597 F.3d at 25 n.3. "Parties are not truly necessary in the vernacular sense of the word 'unless and until they satisfy the terms of Rule 19(b).'" <u>Id.</u> (quoting <u>Confederated Tribes of Chehalis Indian Reservation v. Lujan</u>, 928 F.2d 1496, 1501 n. 1 (9th Cir.1991)).

19(a). A party must be joined if feasible if (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Fed. R. Civ. P. 19(a).

Secondly, if the party is deemed "necessary," but joinder would deprive the court of subject-matter jurisdiction, the Court must determine whether, applying the criteria set forth in Rule 19(b), the party is "indispensable." Jiminez v. Rodriguez-Pagan, 597 F.3d at 25. Those factors include "(1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc., 516 F.3d 18, 23 (1st Cir.2008). The factors are not exclusive and "a court may take into account

other considerations in determining whether or not to proceed without the absentee as long as they are relevant to the question of whether to proceed in "'equity and good conscience.'" Id. at 23 (quoting In re Cambridge Biotech Corp., 186 F.3d 1356, 1369 (Fed.Cir.1999)).

The First Circuit has explained that the Rule "calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case." Bacardi Intern. Ltd. v. V. Suarez & Co., Inc., 719 F.3d at 9 (citing Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 22 n. 19 (1st Cir.2008)); In re Olympic Mills Corp., 477 F.3d 1, 9 (1st Cir. 2007)(quoting Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 635 (1st Cir.1989) (quoting Advisory Committee Notes)).

Neither Molly nor Craig H. have explained why, in the absence of Craig H.'s children from this litigation, this Court could not grant complete relief as to the existing parties. The Plaintiffs seek to recover monetary damages from the Defendants for Estate assets which, the Plaintiffs allege, the Defendants have converted and used for their own benefit. The portion of the Estate related to the six grandchildren in this family is the Cego Foundation, a trust which was established for the benefit of their education. As it appears, the assets of that $1 million trust, held by the Winter Group, have now been entirely

dissipated. However, even if the Plaintiffs were able to recover some or all of those assets, there is nothing to indicate that they seek to exclude the non-party children from the distribution. Rather, the Plaintiffs claim only a share of those funds on behalf of the beneficiaries included in this litigation, as provided for in the trust documents. If, as the Defendants assert, there is a dispute as to the exact allocation of those trust funds,[8] the Court would be able to fashion an appropriate remedy if or when any of those funds are recovered. There is nothing to suggest that, if such recovery were to occur, the Defendants' interests in the matter would diverge from that of the non-party children. Moreover, the Plaintiffs have already indicated a willingness to waive their rights to a more favorable allocation for Shaun's children.

As to the inclusion of Craig H.'s children as plaintiffs in this litigation, the Defendants have not established how the resolution of this case in their children's absence would impede the children's ability to protect their interests. The Plaintiffs' claims are limited to seeking damages from the two

---

[8]
The parties appear to disagree whether the educational funds are to be allocated *per capita*, giving each grandchild one sixth of the assets, or *per stirpes*, giving Craig H.'s four children a share in half of the assets and Shaun's children a share in the other half. Given that the account was undisputedly drained and liquidated by Craig H., that disagreement is of little consequence at this time.

named Defendants, not their children. Neither Craig nor Molly H. have previously sought to add the children in this litigation in order to protect their rights, nor have the Defendants claimed, on their children's behalf, an interest in the Estate. Instead, the Defendants now suggest that the children are required to be joined, in an undisguised attempt to break diversity, deprive this Court of subject-matter jurisdiction, and to have the case dismissed, none of which would further those children's interests in recovering any assets of the educational trust. As to the additional entities—which Craig H. now asserts are required to be joined in this litigation—it is unclear, and Craig H. fails to establish, what those entities' interests may be and how their inclusion in this case might protect such interests. What is clear is that if those entities were to be joined, it would be nearly impossible for the Plaintiffs to find a forum where all parties would be subject to the tribunal's jurisdiction.

With regard to an existing party's "substantial risk of incurring double, multiple, or otherwise inconsistent obligations," the Defendants offer equally hypothetical suggestions. Molly H. asserts that if the educational trust assets are divided 50-50 between Shaun and Craig H.'s children, the non-party beneficiaries could later claim two thirds of those

assets, leaving the parties as well as the trust entities[9] with inconsistent obligations.

As the Plaintiffs have pointed out in their memorandum, there is a significant distinction between "inconsistent obligations" and "inconsistent adjudications or results." The First Circuit explained in Delgado v. Plaza Las Americas, Inc., 139 F.3d 1 (1st Cir.1998) (per curiam), that "'[i]nconsistent obligations' are not...the same as inconsistent adjudications or results," because "[i]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." Id. at 3. "[I]nconsistent adjudications or results occur when a party wins on a claim in one forum and loses on another claim from the same incident in another forum. Id. See Bacardi Intern. Ltd. v. V. Suarez & Co., Inc., 719 F.3d at 12. Accordingly, "a risk that a defendant who has successfully defended against a party may be found liable to another party in a subsequent action arising from the same incident—i.e., a risk of inconsistent adjudications or results—does not necessitate joinder of all of the parties into one action pursuant to Fed. R. Civ. P. 19(a)." Delgado v. Plaza

_____

[9]

Because Rule 19 only addresses "existing parties" in this respect, any "inconsistent obligations" of the Cego Trust and/or the Winter Group is of no concern in this determination.

<u>Las Americas, Inc.</u>, 139 F.3d at 4.

In sum, the Court concludes that neither Craig H.'s children, nor any of the entities (whose limited role in these proceedings appears to involve holding assets which have now been depleted) are required to join in this litigation. Even if the Court were to determine that Craig H.'s children should be joined in this litigation, at least two of them (arguably identically positioned as the other two) are not feasible to join as Plaintiffs because they reside in the same state as the Defendants and their addition would destroy complete diversity of citizenship. The matter is less clear with respect to Craig H.'s children who reside in Connecticut and any of the other entities, which, Craig H. argues, are necessary to this litigation. Although this Court concludes that none of those parties are required to be joined, it is noted that there has been no attempt by those parties to enter this litigation.

Having presided over this case since its inception, and after considering the parties' asserted positions in light of the factors set forth in Rule 19(b), the Court concludes that "in equity and good conscience, the action should proceed among the existing parties." Fed. R. Civ. P. 19(b). As already noted, the Defendants fail to establish how an adjudication of this case in the absence of Craig H.'s children as plaintiffs will prejudice

either the existing parties or the children themselves. To the extent that there should be any prejudice, the Court can fashion a remedy to ensure an adequate judgment. Should any of the educational trust assets be recovered, the Defendants can certainly pursue their children's interest, particularly since those interests will be aligned with their own: to maximize their children's recovery of those assets.

Moreover, if this case were to be dismissed for non-joinder, it is more than uncertain whether there would be an adequate remedy for either the Plaintiffs or for Craig H.'s four children, whose interests the Defendants purport to represent in their motions. The Defendants suggest that the Plaintiffs could re-open Florida probate proceedings or bring suit in Rhode Island state court. However, it is not established that either court could provide a complete adjudication of Plaintiffs' claims in this matter, nor is it likely that either court would have personal jurisdiction over all the existing parties or those the Defendants seek to join in this litigation. For all those reasons, the Defendants' motions to dismiss this case for failure to join indispensable parties are DENIED.

## IV. Reinstatement of Default against Craig H.

On September 17, 2014, this Court, expressing grave concerns about the established willfulness of Craig H.'s default, and

notwithstanding his blatantly perjurious testimony, set aside the default entered against the Defendants. The Defendants were advised, however, that if it were proven that they had used delaying tactics to gain a litigation or practical advantage, the Court would reconsider its ruling and reinstate the default. As set forth in great detail in the November 25, 2014 R&R, and unchallenged by Craig H. in his objection to the R&R, the facts make abundantly clear that reinstatement of the default, although an extreme sanction, is entirely appropriate at this time.

While there is considerable doubt as to the truthworthiness of Molly H.'s explanations as to her failure to comply with various court orders, the Magistrate Judge made a credibility determination and deemed Molly H.'s conduct materially different from that of her husband. There can be no doubt, however, as to Craig H.'s conduct in attempting to delay this litigation and obfuscate the facts in this case. It is undisputed that the Defendants continued to dissipate the Estate assets after this Court entered an expedited discovery order and that Craig H. provided incomplete, false, and deceptive responses in the course of discovery. Despite repeated promises by Craig H. to provide tax returns, financial documents, and other pertinent information, nothing was ever produced. After initially agreeing to be deposed and participating in one day of deposition, Craig

H. then invoked his Fifth Amendment right against self-incrimination and refused to answer any more questions. Meanwhile, the Plaintiffs continued, at great effort and expense, to discover how Craig H. had systematically drained the assets of the Estate, while spending vast amounts at a local casino and on luxury vacations.

Over the course of this litigation, Craig H. has deliberately violated a number of explicit Court orders, all of which has resulted in much misinformation and delay in the case, leading to considerable prejudice and expense for the Plaintiffs. As set forth in painstaking detail in the November 25, 2014 R&R, Craig H. violated the August 15, 2014 Order for expedited discovery by failing to provide genuine information and by providing false, incomplete, and misleading information. At the same time, Craig H. continued to drain various Estate accounts, including the Winter Group account, which was established for the education of his and his brother's children. Likewise, Craig H. violated the September 25, 2014 Discovery Order by refusing to produce financial documents which, based on the discovery efforts by Plaintiffs, would have disclosed the withdrawals of large sums from various accounts, the existence of which Craig H. had kept hidden. Neither Defendant appeared at an October 14, 2014 hearing before the Magistrate Judge, although both had been ordered to be

present. This Court's October 2, 2014 Order for payment of $30,777 in sanctions by October 10, 2014 was not complied with until January 2015, at which time Molly H. paid $22,500; the rest remains unpaid. Finally, Craig H. has refused to comply with the terms of the September 29, 2014 Consent Order by failing to execute documents that would allow the Plaintiffs to recover funds from the Hamburg account, and by failing to produce other financial information. Given that neither Defendant has been gainfully employed since Craig H.'s father and stepmother died, it is unclear from which source they are drawing the $9,000 per month for expenditures permitted under the Order. From discovery conducted by the Plaintiffs, it also appears that the Defendants continue to spend money on non-essential items, e.g. trunk shows at luxury hotels, without noting such expenditures on the required monthly operating statements.

In sum, Craig H.'s conduct since this Court vacated the default against the Defendants in September 2014 makes abundantly clear that his continuous violations of Court orders were done willfully, in bad faith, and with the intent to delay this case indefinitely and to frustrate the Plaintiffs' attempts to discover the extent of Craig H.'s raiding of Estate assets and his hiding the whereabouts of any remaining funds. For those reasons, the Court accepts the November 25, 2014 R&R and

reinstates the default against Craig H. By entering this default, the question of liability in Counts I - IV is resolved in favor of the Plaintiffs; with respect to Counts V and VI, it is resolved in favor of the Plaintiffs as to Craig H.

### VI. Craig H.'s Discovery Motions (Dkt. Nos. 51 and 55)

In light of this Court's determination that default against Craig H. is to be reinstated, no lengthy discussion regarding Craig H.'s discovery motions is required. It is evident from the record that these motions were only filed to further obstruct discovery and to delay this litigation. Contrary to Craig H.'s assertion, a Rule 16 conference (which is not mandatory under Rule 16 of the Federal Rules of Civil Procedure) took place on August 15, 2014. It is undisputed that Craig H. has offered little, if any, material and/or truthful discovery information in these proceedings and that the Plaintiffs have been forced to engage in extensive non-party discovery to find documentation that Craig H. already had in his possession but refused to provide. It is also undisputed that the Plaintiffs have promptly produced all such discovery materials to the Defendants as they received them. Moreover, the reinstatement of default against Craig H. establishes his liability with respect to Counts I through VI of the Complaint, limiting any discovery to a determination of damages. Accordingly, both motions (Dkt. Nos. 51

and 55) are DENIED.

To summarize the Court's decision,

A.   the  R&R  is  adopted  with  respect  to  the  following recommendations only[10]:

    1.   the default against Craig H. is reinstated;

    2.   Craig H. is herewith ordered to provide a complete and  full  accounting  in  connection  with  the discharge  of  his  fiduciary  duties  as  personal representative of the Estate and as trustee of the Trust **on or before 12:00 p.m. EDT July 10, 2015;**

    3.   Craig H. is enjoined from acting as the personal representative of the Estate and as trustee of the Trust, as well as from taking any further action with  respect  to  property  that  belongs  to  the Estate,  the  Trust,  the  Cego  Foundation,  or  the Winter Group;

    4.   Craig  H.  is  ordered  to  execute  all  documents necessary  to  remove  himself  as  personal representative of the Estate and as trustee of the Trust.

B.   the  Defendants'  motions  to  dismiss  this  case  for

---

[10] The  Court  declines  to  adopt  the  Magistrate  Judge's recommendations re: partial final judgment, issuance of an order to show cause, and the imposition of additional sanctions.

failure to join indispensable parties (Dkt. Nos. 53, 54) are DENIED.

C.  Craig H.'s motions for extension of time to complete discovery (Dkt. No. 51) and to compel Rule 26(a) initial disclosures from all Plaintiffs (Dkt. No. 55) are DENIED.

In order to ensure compliance with this Court's orders, the Court will schedule a hearing **on July 16, 2015 at 11:00 a.m.,** to be attended by both Defendants and counsel for all parties, in which Craig H., in the presence of the Court and all counsel, shall execute all necessary documents to remove himself as personal representative of the Estate and as trustee of the Trust. The Court puts Craig H. on notice that failure to comply with the Court's orders in this matter constitutes contempt of Court and will result in further sanctions.


SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
United States District Judge
June 11, 2015