FILED

2015 SEP 22 P 3: 43

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

DARREN MALLOY HEKKING &

SHAUN EGAN HEKKING, on behalf of himself and

on behalf of C.H. and BH.

Plaintiffs

V.

CRAIG ANTONY HEKKING &

MOLLY DURANT HEKKING                    Civil Action No: 1:14-cv-00295-ML-PAS

Defendants

## DEFENDANT'S DAUBERT MOTION IN LIMINE TO EXCLUDE TESTIMONY OF EXPERT WITNESSES

### NOTICE OF MOTION

Defendant's move to exclude the testimony of plaintiff's expert witness Joseph A DeCusati and the firm of MEYERS, HARRISON AND PIA VALUATION AND LITIGATION SUPPORT, LLC.

1

## INTRODUCTON AND STATEMENT OF FACTS

Joseph A DeCusati and the firm of MEYERS, HARRISON AND PIA VALUATION AND LITIGATION SUPPORT, LLC. , on behalf of plaintiffs, submitted a document to the Court and defendant's entitled DAMAGE DETERMINATION ANALYSIS PREPARED IN CONNECTION WITH THE MATTER OF HEKKING V. HEKKING.

In that document ("analysis") plaintiffs through their expert purport to enumerate damages ostensibly owed by defendants. The "analysis" details some actual disposition of assets. For example the "analysis" states that: "Upon information and belief the proceeds from the sale of the two Naples Condos were divided equally among the Brothers." The "analysis" further goes on to indicate that:

> "Upon Information and Belief the proceeds of the life insurance were distributed among the Brothers."

Defendants agree that these facts are true and recognized, and that Estate property in Florida was distributed as stated in accordance with the will of Laurie and Renate Hekking. Defendants agree with those statements. However, the disbursement of 1/3 share of life insurance proceeds was a voluntary act of inclusion to the benefit of Darren Hekking, as the proceeds from that life insurance policy were assets of The Winter Group in which Craig Hekking was granted a Two-Thirds ( 2/3) interest and Shaun Hekking was granted a One-Third (1/3) interest.

Defendants have been informed by prior counsel that as a matter-of-law, Plaintiff's counsel stipulated or otherwise stated or agreed in a previous hearing that the assets of The Winter Group Limited (TWG) were - at the behest of owner Laurie V. Hekking – granted to Plaintiff Shaun

Hekking in a One-Third (1/3) share and to Defendant Craig Hekking in a Two-Thirds (2/3) share.

With exception of the statements recognized as true, defendants move to exclude all other statements of Mr. DeCusati.

As this is the case, we contend that the "analysis" ignores the aforementioned and stipulated partition of TWG assets which further clouds the assertions of the "analysis"

The "analysis" then goes on to claim that a number of assets were undistributed to plaintiffs. Among those assets the "analysis" details in its purported assessment for damages due plaintiffs, claims related to:

    a. Hamburger Sparkasse

    b. The Erlenbach apartment

    c. The Breakwater Condo

    d. St. Pierre Condo

    e. Fur Coat Collection, Shoes, Gowns etc

    f. Jewelry

    g. Union Bancaire Prive (UBP)

    h. Zürcher Kantonalbank (ZKB)

    i. Rent in Erlenbach

    j. "Unattributable" Cash flows of $358,684

    k. A grand total of $520,445 deprived of plaintiffs from assets on deposit of The Winter Group Ltd. At Gutzwiller Bank

The basis of the entire analysis of these items is founded on unverified conjecture furnished by the plaintiffs; loaded with prejudicial and unfounded commentary. A cursory examination by Mr. DeCusati the expert, of information available to plaintiffs, would have either caused him to be unable to make a determination without additional fact, or completely eliminated from the assessment of damages certain items.  Further, the contention that roughly 50% of The Winter Group Ltd. Assets on deposit at Gutzwiller Bank were somehow deprived of plaintiff's is plainly absurd when as a matter of law plaintiffs have already stipulated the 2/3 – 1/3 shares granted to Craig and Shaun Hekking, respectively.

We contend that the expert has demonstrated that his methodology is deficient; his testimony demonstrates that he has not applied in the case before the Court the same intellectual rigor that the expert would have applied in the expert's chosen profession, there is no probative value in the expert's own testimony, and no demonstration or application of thorough and independent vetting of facts and data occurred in the "analysis." The opposing expert's own testimony has demonstrated these facts.

## ARGUMENT

In effect, the expert testimony of Joseph A DeCusati fails to meet established Daubert standards.

"The objective of [Daubert's gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

In Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786 (1993), the Supreme Court abandoned the "general acceptance" test as the sole determinant in admission of scientific expert testimony in favor of a broader examination, which included such factors as whether the opinions have been or can be tested, whether they have been subjected to peer review or published, their rate of error, and their general acceptance in the field. In Kumho Tire v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167 (1999), the Supreme Court expanded the scope of the Daubert test by holding that the test applies to all expert testimony, whether scientific or non-scientific. Trial judges have used a pre-trial "Daubert/Kumho" hearing to assist in determining the admissibility of expert testimony, and have turned to other admissibility standards such as Fed. R. Evid. 702 (whether the testimony assists the trier of fact) and Fed. R. Evid. 403 (whether the testimony will confuse the jury) to exclude or admit testimony without resorting to the complicated format introduced in Daubert and expanded in Kumho. In turn, appellate courts since Kumho have focused on whether the trial judge abused discretion in admitting or excluding the testimony and, in some cases, have examined, without focusing on the Daubert factors, whether the expert testimony satisfied other evidentiary standards such as whether there was an adequate factual foundation for the expert's testimony.

The Supreme Court noted with approval that the district court did not doubt the expert's qualifications but found unreliable "the methodology employed by the expert in analyzing the data obtained in the visual inspection, and the scientific basis, if any, for such analysis."
It further noted that nothing in Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. The court in Kumho Tire found no convincing defense of the expert's methodology.

In Kumho, the Supreme Court expanded the scope of the Daubert test to include all forms of

expert testimony. <u>Kumho Tire v. Carmichael</u>, 526 U.S. 137, 119 S.Ct. 1167 (1999). In this case, the plaintiffs claimed that a defective tire caused their car to overturn. The plaintiffs offered a mechanical engineer to testify that a defect in the tire was the cause of the blowout. The District Court judge, on the defendant's motion, excluded the expert and granted summary judgment. The judge concluded that the expert's testimony was subject to a Daubert review even though it was "technical" rather than "scientific," and that, based on such review, the expert's methods were not reliable. The Eleventh Circuit reversed and remanded, finding that the judge erred in applying the Daubert test to non-scientific testimony. The Supreme Court reversed, concluding that "it would prove difficult, if not impossible, for judges to administer evidentiary rules under which a 'gatekeeping' obligation depended on a distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge, since there is no clear line dividing the one from the others and no convincing need to make such distinctions." <u>Kumho</u>, 119 S.Ct. at 1174-1175.

The Court then looked at the trial judge's decision to exclude the expert, in light of the Daubert test and the wide latitude of discretion granted to trial judges in determining whether an expert's opinion is relevant and reliable. The Court found that the trial judge had not abused his discretion in excluding the expert, noting that the expert met none of the Daubert criteria and that the methodologies used could not reliably determine the cause of the tire's separation.

The question then becomes, in examining Mr. DeCusati's methodology and findings, whether the expert has applied the same "intellectual rigor" in acting as an expert in this case that he would be required to employ in his or her chosen profession.

Returning to the language in Kumho Tire, in these two examples, the experts, by their own testimony, have demonstrated that their methodology did not employ the same "intellectual

6

rigor" that they would have employed in their chosen profession, had they been retained to provide accounting advice to a client.

In a Maine case, an expert's testimony on projections was excluded because he "arrived at these sales figures based entirely on…subjective expectations" provided by the Plaintiff. (*Downeast Ventures Ltd. v. Washington County*, 2007 WL 67988, Page 3 (D. Me. 2007), Not Reported in F.Supp.2d (2007).

Experts must demonstrate thorough and independent vetting of facts and data. This threshold is not met even if the plaintiff-provided data is from the owner of the business or a source that has other established ties to the business. A New York court excluded an expert where most of the information underlying his business damages analyses came to him from the company's president and was filled with untested assumptions.( *Imaging International v. Hell Graphic Systems, Inc., and Linotype-Hell Company*, 2007 N.Y. Slip Op 52120(U) [Misc 3d 1123(A)] LEXIS 7368.)

Further, Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure requires parties to disclose the names of their retained trial experts before trial and to give the opposing party a written report, prepared and signed by the expert witness, that must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Parties must also provide "the facts or data considered by the witness in forming them," exhibits, the expert's qualifications (including publications) and compensation, and a listing of expert testimony during the

preceding four years. The report should be sufficiently comprehensive to establish admissibility under all of the Rule 702 criteria.

Over the years, the rules have changed regarding the disclosure of communications between counsel and the expert. In 2010, Rule 26 was amended to provide that such communications are not discoverable and that draft reports are protected from disclosure. Not protected are communications regarding the compensation of the expert, the identification of the facts or data that counsel provided and those that the expert considered, and the assumptions that the attorney provided and that the expert relied on in forming the opinions.

No such disclosures have been provided to plaintiffs related to the "analysis" of Mr. DeCusati under the guidelines of Rule 26(a)(2)(B)(i) and provide the Court additional reason and rationale for the exclusion of Mr. DeCusati's testimony and "analysis".

CONCLUSION

At the end of the day, Mr. DeCusati's report amounts to an impermissible effort "to plug holes in [defendants] case, to speculate, and surmise." In re Aluminum Phosphate Antitrust Litig., 843 F. Supp. 1497, 1506 (D.Kan. 1995).

Plaintiffs should not be permitted to offer Mr. DeCusati's "analysis" as essentially a "channeler: of second-hand [industry] information that, if valid, should come first-hand from unpaid fact witnesses. See Law v. NCAA, 185 F.R.D. 324, 341 (D. Kan. 1999).

Mr DeCusati is not qualified to offer these opinions, they lack any reasonable foundation, and they are not helpful to resolving the issues in this case. Further, they advance claims which are fabricated by the plaintiff's and as such could by their very nature be impossible to validate as an expert.

Mr. DeCusati should not be permitted to offer opinions relating to unestablished bases for damages.

For the reasons stated above, Plaintiffs respectfully request the Court to enter an Order to exclude Mr. DeCusati's testimony in whole.

No remedial action taken by the court at the time the evidence is offered will counteract the damage caused.

> vi. Request that the court prohibit all parties and witnesses as well as counsel from raising the evidence in question.
>
> vii. Request that opposing party be prohibited from referring to or offering the prejudicial evidence either directly or indirectly, including during voir dire, opening statement, questions to or testimony by witnesses, and closing argument.

WHEREFORE, defendants respectfully request an order to preclude as evidence the testimony of Joseph A DeCusati and the firm of MEYERS, HARRISON AND PIA VALUATION AND LITIGATION SUPPORT, LLC. in the above-referenced matter, that the Court prohibit all parties and witnesses as well as counsel from raising the evidence in question, that plaintiffs be prohibited from referring to or offering the prejudicial evidence either directly or indirectly, including during voir dire, opening statement, questions to or testimony by witnesses, and closing arguments.

Respectfully submitted this 22nd day of September, 2015

/s/ Craig Hekking
CRAIG HEKKING, PRO SE

/s/ Molly Hekking
MOLLY HEKKING, PRO SE

26i Gibbs Avenue,

Newport, RI 02840